**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Shahid Millkelller Mutee,<br>Movant/Defendant<br>-vs-<br>United States of America,<br>Respondent/Plaintiff. | CV-16-1583-PHX-SRB (JFM)<br>CR-95-0150-PHX-SRB<br><br>**Report & Recommendation**<br>**on Motion to Vacate, Set Aside**<br>**or Correct Sentence** |

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed through counsel a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on May 23, 2016 (Doc. 1). On August 5, 2016 Respondent filed its Response (Doc. 4). Movant filed a Reply on August 25, 2016 (Doc. 5).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. ACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On May 4, 1996, Movant was indicted on one count of being a felon in possession of a firearm. (CR Doc. 1.) (Docket entries in the underlying criminal case, CR-95-0150-PHX-SRB, are referenced herein as "CR Doc. ___.") Movant proceeded to trial and was found guilty of the charge.

1

Subsequently, the Government filed a Notice (CR Doc. 63) seeking an enhanced sentence pursuant to the Armed Career Criminal Act ("ACCA"), in particular 18 U.S.C. § 924(e).  The Government followed with a Sentencing Memorandum (CR Doc. 74), arguing that Movant had four prior violent felony and serious drug offense convictions which qualified him for enhanced sentencing under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  The predicate convictions asserted by the Government were four North Carolina state convictions:

1.  a violent felony committed on July 19, 1985, namely **assault with a deadly weapon** (to wit: an automobile) upon a law enforcement officer, citing 18 U.S.C. § 924(e)(2)(B)(i) and (ii);

2.  a violent felony committed on December 26, 1987, namely felony **breaking and entering**, which the Government argued qualified as a burglary under *Taylor v. U.S.*, 495 U.S. 575 (1990);

3.  a serious drug offense committed on March 24, 1993, **namely possession of cocaine with intent to sell/deliver**, and **sale of cocaine**; and

4.  a violent felony committed on July 6, 1990, namely felonious escape.

(Notice, CR Doc. 63 at 4-6 and attached Exhibits 1 through 4.)

Movant appeared for sentencing on November 21, 1996. The court found that the two drug crimes occurred on separate occasions and each constituted a separate conviction for purposes of the ACCA. (CR Doc. 91, R.T. 11/21/96 at 66.)  The court also found that the other three convictions raised by the Government (assault, breaking and entering, and escape) all qualified as ACCA predicate "violent felonies," relying on decisions from the Fourth Circuit. (*Id.* at 66-67.)

The court adopted the reasons set forth in the presentence report and calculated an applicable offense level of 33, a criminal history category of VI, and a sentencing range of 235 to 293 months, and sentenced Movant to 264 months, to be consecutive to his North Carolina and Arizona sentences.  (CR Doc. 82, Statement of Reasons; CR Doc. 84, Judgment.)

## B.  PROCEEDINGS ON DIRECT APPEAL

Movant filed a direct appeal arguing evidentiary error at trial, insufficient evidence to convict, and sentencing error in failing to run his sentence concurrently with his undischarged state sentence.  On October 24, 1997, the Ninth Circuit Court of Appeals rejected each of his arguments and affirmed his conviction and sentence.  (CR Doc. 92, Mem.Dec. 10/24/97.)  *See also United States v. Moore aka Mutee*, 127 F.3d 1107 (9th Cir. 1997) (unpublished).[1]

Petitioner then filed a petition for writ of certiorari, which was summarily denied on October 5, 1998.  *Moore v. United States*, 525 U.S. 917, 119 S. Ct. 266, 142 L. Ed. 2d 219 (1998).

## C.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Motion to Vacate** – Movant commenced the current case by filing through counsel his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on May 23, 2016 (Doc. 1).  Movant's Motion asserts a single ground for relief: "Movant contends that his sentence is illegal under *Johnson v. United States*, 135 S. Ct. 2552 (2015)."  (Order 6/8/16, Doc. 3  at 1.)  Movant's core argument is that three of his prior convictions required for the sentencing enhancement under the Armed Career Criminal Act 18 U.S.C. § 924(e) did not qualify, including:

1. the North Carolina conviction for assault with a deadly weapon under N.C. Gen. Stat. § 14-34.2, can be committed recklessly, and therefore does not qualify as a "violent felony" under the force clause, and because it is not a burglary, arson, extortion or use of explosives, it does not qualify under the enumerated offenses clause, and after *Johnson* cannot qualify under the residual clause;

2. the North Carolina conviction for felony breaking and entering does not qualify as

---

[1] Movant was prosecuted under the name "Alvin David Moore" and his aliases were listed in the Indictment (CR Doc. 1) as "aka Shahid Millkeller Mutee, aka Mutee Shadid, aka Shadid Mutee, aka David Tully Thomas."  His "true name" reflected in the Judgment (CR Doc. 84) was "Shahid Millkeller Mutee."

a violent felony under the enumerated offenses clause of the ACCA because it extends to buildings other than dwellings; and

3. the North Carolina conviction for felony escape does not qualify as a violent felony under the force clause of the ACCA, citing *United States v. Hairston*, 71 F.3d 115, 117 (4th Cir. 1995).

Movant concedes that that the two drug offenses qualify as two of the three required ACCA priors. Finally, Movant argues that under *Welch v. United States*, 136 S.Ct. 1257 (2016), *Johnson* has been made retroactive, and thus his Motion is timely under 28 U.S.C. § 2255(f)(3).

**Response** - On August 5, 2016 Respondent filed its Response (Doc. 4). Respondent argues that Movant's sentence is not in conflict with *Johnson*, because: (1) Movant concedes his two drug convictions qualify as two of the three required convictions for the ACCA to apply; (2) his conviction in North Carolina for assault with a deadly weapon qualifies as a violent felony because its elements match the generic definition of assault with a deadly weapon, including the intentional (not just reckless) use of force; (3) his breaking and entering conviction categorically qualifies as a burglary because the covered structures are limited to those within the generic definition of burglary; and (4) the issue regarding the breaking and entering conviction could and should have been raised years ago following the decision in *Descamps v. United States*, 133 S.Ct. 2276 (2013). Respondent concedes that Movant's felony escape conviction does not qualify as a crime of violence after *Johnson*.

**Reply** - On August 25, 2016, Movant filed a Reply (Doc. 5), arguing that the Government has waived any defense of non-retroactivity or the statute of limitations by failing to adequately raise them in its Response. Movant argues that the Government has failed to show the assault charge was a violent felony, citing *State v. Coffey*, 259 S.E.2d 256, 257 (N.C. Ct. App. 1979) and *State v. Eason*, 86 S.E.2d 774 (N.C. 1955) to show that mere "culpable or criminal negligence" is sufficient *mens rea*. Movant argues that an argument under *Descamps* would have been futile pre-*Johnson* because any

4

*Descamps* error would have been harmless because burglary qualified under the pre-*Johnson* residual clause.  Movant further argues that the breaking and entering would not qualify as burglary because the North Carolina statute would extend to structures not intended for occupancy, such as telephone booths.

**Supplement** – On September 12, 2016, Respondent filed its Supplemental Authority in Support of Response (Doc. 6), raising *Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016) for the proposition that reckless offenses can still be classified as crimes of violence under the ACCA.  Movant has not responded.

### III.  APPLICATION OF LAW TO FACTS
#### A.  LEGAL BACKGROUND

#### 1.  The Armed Career Criminal Act

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 922(g), *et seq*,  forbids certain people from shipping, receiving, or possessing firearms, and, in general, punishes violators with imprisonment for up to 10 years.  18 U.S.C. § 924(a)(2).  However, if the offender has three or more prior convictions for a "serious drug offense" or "violent felony," the ACCA increases the prison term to a mandatory minimum 15-year sentence and a maximum term of life imprisonment.

In relevant part, the ACCA defines "violent felony" as follows:

> "any crime punishable by imprisonment for a term exceeding one year  . . . that —
> (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii)     is burglary, arson, or extortion, involves the use of explosives, ***or otherwise involves conduct that presents a serious potential risk of physical injury to another.***"

18 U.S.C. § 924(e)(2)(B) (*emphasis added*).  Subsection (i) has become known as the "force clause."  The emphasized portion subsection (ii) of the definition has become known as the "residual clause."  The remainder has become known as the "enumerated offenses clause."

**2.  *Johnson* and the Residual Clause**

**Residual Clause Invalid** - On June 26, 2015, the Supreme Court held that the "residual clause" in 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutionally vague, and struck it down as a violation of the due process clause of the Fifth Amendment.  *Johnson v. United States*, 576 U.S. ___, 135 S.Ct. 2551 (2015).  However, the *Johnson* holding was expressly confined to the residual clause, and the Court was careful to point out that its decision "does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the [ACCA's] definition of a violent felony."  *Id*. at 2563.  Thus, *Johnson* does not affect the constitutionality of sentencing enhancements premised on § 924(e)(2)(B)(i) (the "force clause") or the first portion of § 924(e)(2)(B)(ii) (the "enumerated offenses clause"). [2]

**Johnson Retroactive** - The Supreme Court subsequently determined, in *Welch v. United States*, ___ U.S. ____, 136 S.Ct. 1257, 1268 (2016), that *Johnson* stated a "substantive rule that has retroactive effect in cases on collateral review."  Accordingly, as a general matter for § 2255 purposes, a § 2255 motion based on *Johnson* is timely if it was filed on or before June 26, 2016, one year from the date on which *Johnson* was decided.  *See* 28 U.S.C. §2255(f)(3) (one year statute of limitations for § 2255 motions begins to run from the "date on which the right asserted was initially recognized by the Supreme Court"); *Orona v. United States*, 826 F.3d 1196, 1198 (9th Cir. 2016) (date on which Supreme Court recognized new right under *Johnson* is June 26, 2015).

//

//

---

2       In addition, several other statutory sentencing schemes incorporate residual clause language, including the mandatory consecutive sentence required by 18 U.S.C. § 924(c).  There is a current split among federal courts on whether, and to what extent, *Johnson* and *Welch* apply to other federal statutes.  *Compare, e.g., United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016) (holding "crime of violence" language in 18 U.S.C. § 924(c)(3) is not unconstitutionally vague because § 924(c)(3)(B) is "considerably narrower than the statute invalidated by the Court in *Johnson* and because much of *Johnson's* analysis does not apply to § 924(c)(3)(B)"); *with Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (applying *Johnson* to the "crime of violence" language found in 18 U.S.C. § 16(b)).

### 3.  The Enumerated Offenses Clause, *Descamps,* and Burglary

**The Enumerated Offenses Clause** - The enumerated offenses clauses provides that four specific types of offenses qualify as predicate offenses under the ACCA: "burglary, arson, or extortion, [or] involves the use of explosives."   18 U.S.C. § 924(e)(2)(B)(ii).   In determining whether a conviction qualifies as one of these enumerated offenses, "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction.  *Taylor v. United States*, 495 U.S. 575, 588–89 (1990).  Thus, to make the required comparison of elements, the courts utilize either a "categorical approach," or a "modified categorical approach."

> To determine whether a past conviction is for one of those crimes, courts use what has become known as the "categorical approach": They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime— i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.
> We have previously approved a variant of this method— labeled (not very inventively) the "modified categorical approach"—when a prior conviction is for violating a so-called "divisible statute." That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

*Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).  Thus, a conviction qualifies either if its elements are directly comparable (the "categorical approach") or if one of the divisible alternatives is comparable, and specific portions of the record show that was the version for which the defendant was convicted (the "modified categorical approach"). "If the state statute is narrower than the generic view…there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the

elements of [the generic offense]." *Taylor*, 495 U.S. at 599.

In utilizing the "modified categorical approach," the courts are not concerned with identifying and comparing specific facts of the offense, only in identifying which version of the offense the defendant was convicted under.   The purpose is "a focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285.   In discussing why it had adopted an elements focused approach, the Supreme Court has identified three reasons:

> First, it comports with ACCA's text and history. Second, it avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries. And third, it averts "the practical difficulties and potential unfairness of a factual approach."

*Id.* at  2287.

**Indivisible Statutes** - In *Descamps*, the Supreme Court held that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements," 133 S.Ct. at 2282, "i.e., one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense," *id.* at 2281.   Thus, the Court specifically rejected an approach which would allow reference to the record regarding an indivisible statute, concluding that it "turns an elements-based inquiry into an evidence-based one. It asks not whether 'statutory definitions' necessarily require an adjudicator to find the generic offense, but instead whether the prosecutor's case realistically led the adjudicator to make that determination." *Id.* at 2287.

**B.  TIMELINESS**

**1.  One Year Limitations Period**

Respondents assert that the portion of Petitioner's Petition related to the breaking and entering conviction could and should have been raised years ago following the decision in *Descamps v. United States*, 133 S.Ct. 2276 (2013).

As part of the Anti-Terrorism and Effective Death Penalty Act of 1996

8

("AEDPA"), Congress provided a 1-year statute of limitations for all applications for motions to vacate filed pursuant to 28 U.S.C. § 2255.   The statute of limitations applicable to habeas proceedings by federal prisoners has been codified at 28 U.S.C. § 2255(f), which generally provides that motions to vacate filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

**2.  Conviction Final**

A federal habeas petitioner's time to file under 28 U.S.C. §2255 generally begins to run on "the day on which the judgment of conviction becomes final." 28 U.S.C. §2255(f).   Although §2255 does not define "final", the Supreme Court has applied its ordinary standard of finality.   "Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  *Clay v. United States*, 537 U.S. 522, 527 (2003).

Here, Movant did file a certiorari petition, which was not denied until October 5, 1998.  *Moore v. United States*, 525 U.S. 917, 119 S. Ct. 266, 142 L. Ed. 2d 219 (1998). Thus, his one year did not commence to run until after the denial of certiorari petition October 5, 1998.[3]

Thus, under this provision, Movant's Motion to Vacate, filed May 23, 2016 (Doc. 1) would be almost 18 years delinquent under § 2255(f)(1).

**3.  New Rule**

Movant argues (and Respondent agrees in part) that his Motion to Vacate should be considered timely because it is based on new rules adopted by the U.S. Supreme Court in *Johnson*, and thus governed under the later commencement time provided for in

---

[3] Later commencement times can result from an impediment, and newly discovered factual predicates for claims.  *See* 28 U.S.C. § 2255(2) and (4). Movant does not assert either of these apply.

9

§ 2255(f)(3). That section provides that the limitation period can run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

As noted hereinabove, a § 2255 motion based on *Johnson* is timely if it was filed on or before June 26, 2016, one year from the date on which *Johnson* was decided.  *See* 28 U.S.C. §2255(f)(3) (one year statute of limitations for § 2255 motions begins to run from the "date on which the right asserted was initially recognized by the Supreme Court"); *Orona v. United States*, 826 F.3d 1196, 1198 (9th Cir. 2016) (date on which Supreme Court recognized new right under *Johnson* is June 26, 2015).  Accordingly, to the extent that Movant's Motion depends upon *Johnson*, it was filed some 34 days prior to the expiration of the statute of limitations.

Respondent argues, however, that the portion of the Motion attacking the use of Movant's breaking and entering conviction arises under *Descamps*, not *Johnson*, and that *Descamps* was decided in 2013, making Movant's Motion two years delinquent.  Movant replies that while the *Descamps* argument could have been raised earlier, in light of the then applicable pre-*Johnson* law, the argument would have been futile because Movant's other convictions were sufficient to sustain the sentence.

Indeed, as discussed hereinafter, Movant's attack on his sentence can only be effective under the post-*Johnson* law.  Section 2255(f)(3) applies to a newly recognized "right," not a newly recognized argument.  Prior to *Johnson*, Movant had an argument, but no right to seek relief.  Accordingly, even though Movant must also rely on the older rule in *Descamps*, his right to relief, if any, really arises under *Johnson*.

**4.  Conclusion re Timeliness**

Therefore, the timing of the *Johnson*  case controls the commencement of the statute of limitations, and Petitioner's one year expired on June 26, 2016, making his May 23, 2016 Motion timely.

## C.  APPLICATION OF THE ACCA POST-*JOHNSON*

Movant argues that he had only two of the three requisite predicate offenses necessary to apply the ACCA because his assault, breaking and entering, and escape charges do not qualify as violent felonies.

## 1.  Escape Not Violent Felony

Movant argues, and Respondent concedes (Response, Doc. 4 at 9.) that Movant's North Carolina felony escape conviction is not a predicate offense after *Johnson*.

**The Offense** - Here, Movant was convicted of felony escape under N.C. Gen. Stat. §148-45(b), committed on July 6, 1990 and sentenced on July 23, 1991.  (CR Doc. 74, Govt.'s Sent. Memo, Exhibit 4, Judgment & Commitment.)

> (b)      Any person in the custody of the Department of Correction, in any of the classifications hereinafter set forth, who shall escape or attempt to escape from the State prison system, shall, except as provided in subsection (g) of this section, be punished as a Class J felon:
>      (1) a prisoner serving a sentence imposed upon conviction of a felony;
>      (2) a person who has been charged with a felony and who has been committed to the custody of the Department of Correction under the provisions of G.S. 162-39;
>      (3) a person who shall have been convicted of a felony and who shall have been committed to the Department of Correction for presentence diagnostic study under the provisions of G.S. 15A-1332(c) or G.S. 148-49.3;
>      (4) any person previously convicted of escaping or attempting to escape from the State prison system.

N.C. Gen. Stat. § 148-45(b) (1985).  *See* N.C. Sess. Laws 1973, c. 1120, § 1 (available at http://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1973-1974/SL1973-1120.html, last accessed 12/7/16); N.C. Sess. Laws 1975, c. 770, § 2 (available at http://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1975-1976/SL1975-770.html, last accessed 12/7/16); N.C. Sess. Laws 1979, c. 760, § 5 (available at http://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1979-1980/SL1979-760.html, last accessed 12/7/16); N.C. Sess. Laws 1983, c. 465, §§ 1-3 (available at http://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1983-1984/SL1983-465.

html, last accessed 12/7/16); and N.C. Sess. Laws 1985, c. 226, § 3 (available at http://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1985-1986/SL1985-226. html, last accessed 12/7/16).

"The elements of felonious escape thus are (1) lawful custody, (2) while serving a sentence imposed upon a plea of guilty, a plea of nolo contendere, or a conviction for a felony, and (3) escape from such custody." *State v. Miller*, 146 N.C. App. 494, 503, 553 S.E.2d 410, 416 (2001) (citing *State v. Malone*, 73 N.C.App. 323, 324, 326 S.E.2d 302, 302–303 (1985)).

**Enumerated Offense** – As observed in *United States v. Hairston*, 71 F.3d 115, 117 (4th Cir. 1995), "felony escape from custody in North Carolina does not constitute one of the specifically named crimes in § 924(e)(2)(B)(ii)," the enumerated offenses clause.[4] The *Hairston* court went on to apply the categorical approach and to conclude that felony escape did qualify under the residual clause because "[t]o avoid jeopardizing the success of the escape and further punishment upon capture, the escapee may choose to dispel the interference by means of physical force." 71 F.3d at 118.

Moreover, under *Johnson*, that clause is not enforceable.

Thus, Movant's felony escape conviction does not qualify under the enumerated offenses clause.

**Force Clause** – Conversely, the *Hairston* court concluded "that felony escape from custody in North Carolina does not have as an element of the crime the use, attempted use, or threatened use of physical force against another." *Hairston*, 71 F.3d at 117.

Similarly, in *United States v. Simmons*, 782 F.3d 510 (9th Cir. 2015), the Ninth Circuit concluded that the Hawaiian "offense of escape from custody" did not qualify as

---

[4] In *United States v. Bethea,* 603 F.3d 254, 257 (4th Cir. 2010), the Fourth Circuit declined to apply *Hairston's* analysis under the residual clause to a South Carolina escape offense committed by failure to return from furlough. But North Carolina's provision for failure to return from furlough is separately defined under subsection (g) of N.C. Gen. Stat. 148-45. Movant's conviction was specifically based on subsection (b).

a violent felony because it "does not have as an element the use, attempted use, or threatened use of force." *Id.* at 518.  Rather, the only elements to the Hawaiian escape offense were "first, that the defendant escaped from custody; and second, that he or she did so intentionally." *Id.*  Similarly, North Carolina's § 148-45(b) has no element requiring the use of force, only lawful custody, on a felony, and escape. *Miller*, 553 S.E.2d at 416.

**Conclusion** – Accordingly, Movant's conviction for felony escape does not qualify as a predicate offense under the ACCA, and at least one of his assault or burglary charges must qualify to sustain his sentence under the ACCA.

## 2.  Assault as Violent Felony

Movant was convicted in North Carolina of assault with a deadly weapon against a law enforcement officer, under N.C. Gen. Stat. § 14-34.2.  Movant argues this offense can be committed recklessly, and therefore does not qualify as a "violent felony" under the force clause, and because it is not a burglary, arson, extortion or use of explosives, it does not qualify under the enumerated offenses clause, and after *Johnson* cannot qualify under the residual clause.

Respondent argues that this conviction qualifies as a violent felony because its elements match the generic definition of assault with a deadly weapon, including the intentional (not just reckless) use of force.

Movant replies that the Government has failed to show the assault charge was a violent felony, citing *State v. Coffey*, 259 S.E.2d 256, 257 (N.C. Ct. App. 1979) and *State v. Eason*, 86 S.E.2d 774 (N.C. 1955) to show that mere "culpable or criminal negligence" is sufficient *mens rea*.

Respondent filed a Supplement (Doc. 6), asserting that the Supreme Court rejected an exception for "reckless" offenses in *Voisine v. United States*, 136 S. Ct. 2272 (June 27, 2016).  Movant has not responded.

**The Offense** – Movant committed his assault offense on May 31, 1980, and was

13

sentenced on July 19, 1985.  (Government's Sentencing Memo, CR Doc. 74 at Exhibit 1, Judgment and Comitment).   North Carolina General Statue § 14-34.2, as in effect on May 31, 1980, provided:

> § 14-34.2.  Assault with a firearm or other deadly weapon upon law enforcement officer or fireman. — Any person who shall commit an assault with a firearm or any other deadly weapon upon any law enforcement officer or fireman while such officer or fireman is in the performance of his duties shall be punished as a Class I felon.

*See* N.C. Gen. Stat. Ann. § 14-34.2; N.C. Session Laws 1977, c. 829 (available at http://www.ncga.state.nc.us/EnactedLegislation/SessionLaws/HTML/1977-1978/SL1977-829.html, last accessed 12/5/16); and N.C. Session  Laws 1979, c. 760, § 5 (available at http://www.ncga.state.nc.us/EnactedLegislation/SessionLaws/HTML/1979-1980/SL1979-760.html, last accessed 12/5/16.)

**The Enumerated Offense Clause** – Movant's assault charge was not for any of the offenses in the enumerated offenses clause in § 924(e)(2)(B).   Under *Johnson*, it cannot be qualified under the residual clause of that subparagraph.

**The Force Clause** – Movant argues this offense does not qualify under the force clause because it can be committed recklessly, citing *State v. Jackson*, 327 S.E.2d 270, 272 (N.C. Ct. App. 1985), and *United States v. Parnell*, 818 F.3d 974 (9th Cir. April 12, 2016).

The Ninth Circuit had held that under the ACCA, "to qualify as defining a violent felony, a state statute must require that the physical force be inflicted intentionally, as opposed to recklessly or negligently."  *United States v. Lawrence*, 627 F.3d 1281, 1284 (9th Cir. 2010).  *See also United States v. Parnell*, 818 F.3d 974, 982 n. 5 (9th Cir. April 12, 2016).  *Lawrence* had its roots in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir.2006) (*en banc*), where the court had construed the term "crime of violence" under 18 U.S.C. § 16(a), which supplied a definition of "crime of violence" that is materially identical to the force clause of the ACCA.  *See Lawrence*, 627 F.3d at 1284 n.3.  In *Fernandez-Ruiz*, the court observed that the "subjective awareness of possible injury" which underlies a *reckless* offense "is not the same as the intentional use of

physical force against the person of another" which would constitute a "crime of violence" under 18 U.S.C. § 16(a). *Fernandez-Ruiz*, 466 F.3d at 1130. That reasoning flowed from a line of cases, starting with *Leocal v. Ashcroft*, 543 U.S. 1 (2004), holding that the definition required the active use of force against someone, and that "accidental" applications of force would not suffice, and *Fernandez-Ruiz* concluded that "the reckless use of force was not sufficiently 'intentional' to prevent an offense from being accidental." *Fernandez-Ruiz*, 466 F.3d at 1129.

However, in *Voisine v. United States*, 136 S. Ct. 2272 (June 27, 2016), decided after all the foregoing Ninth Circuit cases, the Supreme Court rejected the reasoning underlying *Fernandez-Ruis* in the course of applying the definition of a "misdemeanor crime of domestic violence" to prohibit possession of a firearm under 18 U.S.C. § 922(g)(9). The Court concluded:

> A person who assaults another recklessly "use[s]" force, no less than one who carries out that same action knowingly or intentionally.

*Voisine*, 136 S. Ct. at 2280. Moreover, the Supreme Court expressly rejected the suggestion that its decision in *Leocal* (on which *Fernandez-Ruis* and its progeny relied) precluded reliance upon "reckless" offenses.

> And contrary to petitioners' view, nothing in *Leocal* [ ] suggests a different conclusion—i.e., that "use" marks a dividing line between reckless and knowing conduct. In that decision, this Court addressed a statutory definition similar to § 921(a)(33)(A): there, "the use ... of physical force against the person or property of another." 18 U.S.C. § 16. That provision excludes "merely accidental" conduct, *Leocal* held, because "it is [not] natural to say that a person actively employs physical force against another person by accident." …Conduct like stumbling (or in our hypothetical, dropping a plate) is a true accident, and so too the injury arising from it; hence the difficulty of describing that conduct as the "active employment" of force. But the same is not true of reckless behavior—acts undertaken with awareness of their substantial risk of causing injury (in our contrasting hypo, hurling the plate). The harm such conduct causes is the result of a deliberate decision to endanger another—no more an "accident" than if the "substantial risk" were "practically certain."

*Voisine*, 136 S. Ct. at 2279–80 (citations omitted).

Because the undersigned finds that the potential of a reckless offense is irrelevant,

and the offense thus qualifies, the undersigned does not reach Respondent's contention that the requirement for knowledge about the status of the victim as a law enforcement or fire official supplies the intent requirement.

**Conclusion** – Based on the foregoing, Movant's conviction for assault qualifies as an ACCA predicate under the force clause.

Although that, together with Movant's drug convictions, is sufficient to support Movant's sentence under the ACCA, the undersigned nonetheless addresses his breaking and entering offense.

**3.  Breaking and Entering as Violent Felony**

Movant argues that his North Carolina conviction for felony breaking and entering does not qualify as a violent felony under the enumerated offenses clause of the ACCA because it extends to buildings other than dwellings.  In his Reply, Movant argues that the North Carolina's application to a "structure" would extend to a telephone booth, which lies outside the generic definition which is limited to buildings and structures designed for occupancy.  (Reply, Doc. 5 at 4.)

**The Offense** – Movant committed his breaking and entering offense on December 26, 1987, and was sentenced on February 28, 1989.  (Government's Sentencing Memo, CR Doc. 74 at Exhibit 2, Judgment and Commitment).  North Carolina General Statue § 14-72(b0(2), as in effect on December 26, 1987, prohibited larceny pursuant to N.C.G.S. §§ 14-51, 14-53, 14-54, or 14-57.  *See* 1991 North Carolina Laws Ch. 523 (H.B. 180).  Of those, section 14-54 governed "breaking or entering" and applied to "any building," and defined "building" to "include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property." N.C. Gen. Stat. § 14-54(c).  *See*  N.C. Sess. Laws Ch. 1969, c. 543, § 3 (1969) (available at http://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1969-1970/SL1969-543.h tml, last accessed 12/6/16.)     Thus, the offense of breaking and

16

entering extended not just to buildings, but to other structures "designed to house or secure within it any activity or property."

**Enumerated Offense** – In *Taylor*, the Court discussed at length alternative definitions for the crime of burglary before reaching the following conclusion: "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599.

In doing so, the Court eschewed a common law definition that would limit burglary to an entry to dwellings. "An armed burglary of an occupied commercial building, in the daytime, would seem to pose a far greater risk of harm to persons than an unarmed nocturnal breaking and entering of an unoccupied house." *Taylor*, 495 U.S. at 594. The Court went on to distinguish state formulations that "define burglary more broadly [than the generic definition], e.g., by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Id.* at 599.

The Fourth Circuit and First Circuit have long concluded that North Carolina's offense of breaking and entering qualifies as an enumerated offense of burglary under *Taylor*. *See United States v. Thompson*, 588 F.3d 197, 202 (4th Cir. 2009) (violation of N.C. Gen. Stat. § 14-54); *United States v. Bowden*, 975 F.2d 1080, 1085 (4th Cir. 1992) ("convictions under North Carolina law for breaking or entering under N.C.G.S. § 14-54 qualify as generic burglaries under the *Taylor* case"); and *United States v. Anderson*, 921 F.2d 335, 340 (1st Cir. 1990) ("North Carolina conviction for breaking and entering clearly qualifies as a predicate offense under the Taylor definition").

However, Movant cites *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) for the proposition that to qualify as burglary under the ACCA enumerated offenses clause, the building entered must be a dwelling. (Motion, Doc. 1 at 5.) But *Grisel* makes no such requirement. Instead, it observed that although the common law required that the

building be a dwelling, the Court in *Taylor* adopted the broader definition which extended to other buildings or structures.  488 F.3d at 849.  What *Grisel* did conclude is that the generic definition of burglary did not extend to structures that "could be described loosely as structures but that are either not designed for occupancy or not intended for use in one place."  *Id.*  In contrast, the Oregon statute under consideration extended to "non-buildings," *i.e.* a "booth, vehicle, boat, aircraft," and had been applied to a semi-truck trailer, and a fishing vessel.  488 F.3d at 850.

In his Reply, Movant shifts gears and asserts that the North Carolina statute is too broad because it does not mandate that a structure be intended for occupancy.  (Reply, Doc. 5 at 4.)  But Movant proffers no basis to distinguish between the "structures… designed for occupancy" referenced in *Grisel*, and a "structure designed to house or secure within it any activity or property," referenced in the statutory definition in § 14-54(c).  Clearly the occupancy permitted under *Taylor* and *Grisel* is not limited to residential occupancy.

Movant argues that, as an example, the statute could extend to a telephone booth.  Movant does not clarify whether he is referencing an enclosed room containing a phone, or an unenclosed cabinet on a post or wall in which a telephone has been hung.  The former would clearly fit within *Taylor's* requirement of a "building or structure."  Arguably, the latter might not.

Although *Grisel* did exclude from its generic definition "non-buildings" such as a "booth," 384 F.3d at 850, the North Carolina statute requires that what be entered be a "structure."   In contrast, the Oregon statute in *Grisel* expressly extended past the ordinary meaning of a "building" to include "any booth, vehicle, boat," etc.  *Grisel*, 489 F.3d at 850.  The *Grisel* court's concern was that the inclusion of vehicles, boats, etc. extended beyond a "building," or "constructed edifices intended for use in one place."  No discussion was made of a "booth." Movant points to no logical basis to expand the North Carolina reference to a "structure" to include something not intended for occupancy or not intended for use in one place.   Moreover, the statute limits its

structures to those "designed to house or secure within it any activity or property." Further, the North Carolina Court of Appeals has held that under the principle of *ejusdem generis,* the kinds of structures governed under § 14-54(c) are limited to the common definition of "building," and thus would not extend to structures not capable of occupancy, e.g. fences or monuments.   *State v. Gamble*, 286 S.E.2d 804, 806 (1982). Similarly, it would therefore not extend to a cabinet holding a telephone.

**Conclusion** – Accordingly, the undersigned concludes that Movant's conviction for felony breaking and entering is a violent felony under the enumerated offenses clause, without reliance on the residual clause invalidated in *Johnson*, and thus also satisfies the requirements to establish the propriety of Movant's sentence.

## D.  SUMMARY

Based on the foregoing, the undersigned concludes that Movant's sentence under § 924(e) was adequately supported by at least three qualifying predicate offenses, to wit: his two drug convictions, his assault conviction (under the force clause), and his breaking and entering conviction (under the enumerated offenses clause, as a burglary). Accordingly, his Motion to Vacate must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255, and challenges Movant's federal criminal judgment or sentence.  The recommendations if accepted will result in Movant's Motion being resolved adversely to Movant.

Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed May 23, 2016 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: December 8, 2016

16-1583r RR 16 11 16 on HC.docx

James F. Metcalf
United States Magistrate Judge

21